IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:22-cv-01804-SKC

M.T.,

    Plaintiff,

v.

MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

---

## OPINION & ORDER

---

This action is before the Court under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.*, for review of the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying Plaintiff M.T.'s[1] application for supplemental security income (SSI). The Court has carefully considered the parties' briefs, the social security administrative record, and applicable law. No hearing is necessary.

Because the ALJ applied the correct legal standards and substantial evidence in the record supports his findings and the Final Decision, the Court AFFIRMS the Final Decision. Any error committed by the ALJ was harmless.

---

[1] This Opinion & Order identifies Plaintiff by initials only per D.C.COLO.LAPR 5.2.

## BACKGROUND

This action arises from Plaintiff's April 12, 2015, application for SSI under the Social Security Act claiming she became disabled beginning December 17, 2011. AR: 10. Plaintiff's applications was previously before this Court in case number 18-cv-03302.[2] In that appeal, Judge William J. Martinez vacated and remanded the decision of the Commissioner. Dkt. 8-2 at 38-52; AR: 959-73. Judge Martinez explained:

> The Court concludes that, after an independent examination of these aspects of the record, and in particular Plaintiff's hearing testimony, the [Administrative Law Judge's (ALJ's)] finding that Dr. [Paul H.] Barrett's opinion is consistent with the overall medical evidence of record is not supported by substantial evidence. Because this was the ALJ's only stated reason for giving Dr. Barrett's opinion controlling weight, the ALJ did not properly weigh Dr. Barrett's opinion evidence. This is reversible error. *See, e.g., Drapeau v. Massanari*, 255 F.3d 1211, 1215 (10th Cir. 2001).

AR: 966, 2020 WL 127987, at *4 (D. Colo. Jan. 10, 2020).

After remand, Plaintiff appeared and testified at an administrative law hearing on June 22, 2021, before ALJ Matthew C. Kawalek. AR: 858. Attorney Fredrick W. Newall represented Plaintiff at the hearing.

The ALJ issued his written Decision on August 16, 2021. AR: 878. He again determined Plaintiff had not been under a disability from the December 17, 2011, onset date through the date of his Decision. *Id*. Plaintiff filed written exceptions with

---

[2] The Court uses "Dkt. __" to refer to specific docket entries in CM/ECF and uses "AR: __" to refer to documents in the administrative record. The administrative record may be found at Dkt. 8.

the Appeals Council, which declined to assume jurisdiction. AR: 848. Accordingly, the ALJ's Decision became the Final Decision of the Commissioner of Social Security. 20 C.F.R. § 404.984. Plaintiff then timely filed this action. The Court has jurisdiction to review the Final Decision under 42 U.S.C. § 405(g).

## SSI FRAMEWORK[3]

A person is disabled within the meaning of the Social Security Act "only if [her] physical and/or mental impairments preclude [her] from performing both [her] previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (citing 42 U.S.C. § 423(d)(2)). "The mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Id.* "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Fritz v. Colvin*, 15-cv-

---

[3] Throughout this Opinion, while the Court may cite relevant sections of Part 404 of Title 20 of the Code of Federal Regulations (which contain the Commissioner's regulations relating to disability insurance benefits (DIB)), identical, parallel regulations can be found in Part 416 of that same title, relating to SSI.

00230-JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Social Security Regulations outline a five-step process to determine whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made based on the claimant's age, education, work experience, and residual functional capacity.

*Wilson*, 2011 WL 9234, at *2 (citing 20 C.F.R. § 404.1520(b)–(f)); *see also* 20 C.F.R. § 416.920; *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). Impairments that meet a "listing" under the Commissioner's regulations (20 C.F.R. § Pts. 404 and 416, Subpt. P, App. 1) and a duration requirement are deemed disabling at Step Three with no need to proceed further in the five-step analysis. 20 C.F.R. § 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination

4

or decision and we do not go on to the next step."). Between the Third and Fourth steps, the ALJ must assess the claimant's residual functional capacity (RFC). *Id.* § 416.920(e). The claimant has the burden of proof in Steps One through Four. The Commissioner bears the burden of proof at Step Five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The ALJ's Decision tracks the five-step process. At Step One, he found Plaintiff had not engaged in substantial gainful activity (SGA) since she applied for benefits. AR: 862. At Step Two, he found Plaintiff has the following severe, medically determinable impairments: degenerative disc disease, disc bulge/displacement, and spondylolisthesis of the lumbar spine; Baker's cyst and chondromalacia of the left knee; mild intermittent asthma with environmental and seasonal allergies; diabetes mellitus with diabetic polyneuropathy; and obesity. AR: 862. At Step Three, he found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR: 866. He then found Plaintiff has the RFC

> to perform a reduced range of light work as defined in 20 CFR 416.967(b) in that the claimant can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. She can stand and/or walk 4 hours and sit 6 hours of an 8-hour workday, and she must use a cane for ambulation. The claimant can never climb ladders, ropes, or scaffolds, and she can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. She can tolerate no more than frequent exposure to pulmonary irritants, and she can have no exposure to hazards, including unprotected heights.

*Id.*

At Step Four, the ALJ determined Plaintiff did not have any past relevant work. AR: 876. And at Step Five, he found there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including assembler small products, bench assembler, and tanning salon attendant. AR: 877. Accordingly, the ALJ determined Plaintiff was not disabled during the relevant period. *Id*.

## STANDARD OF REVIEW

In reviewing the Commissioner's Final Decision, the Court's

> review is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance.

*Lee v. Berryhill*, 690 F. App'x 589, 590 (10th Cir. 2017) (internal quotations and citations omitted, citing *inter alia Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").

A court may not reverse an ALJ just because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing the ALJ's decision was justified. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "We review only the sufficiency of the evidence, not its weight . . . . Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views." *Lee*, 690 F. App'x at 591-92. Nevertheless, "[e]vidence is not substantial if it is

6

overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). A reviewing court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

Plaintiff makes two sets of arguments assigning error to the ALJ: (1) the ALJ failed to properly determine the Plaintiff's RFC; and (2) his determination that Plaintiff could perform available work in the national economy is not supported by substantial evidence because the Plaintiff's RFC differs from the hypothetical posed to the vocational expert (VE) at the hearing. Dkt. 10 at 5.

### 1.     **The RFC Findings**

Plaintiff's various arguments regarding the RFC all relate to her pain and the extent that it limits her ability to stand or walk during a workday and to lift weight. Dkt. 10 at 24-41. Accordingly, the discussion below focuses on this aspect of the RFC determination and related evidence.

The ALJ relied on three medical source opinions at issue in this appeal, all of which he gave "significant weight." AR: 872. The first report is by Dr. Barrett, a state

7

agency medical consultant who reviewed Plaintiff's medical records in August 2016. AR: 872. He opined that Plaintiff could stand or walk for six hours of a normal workday with normal breaks. AR: 252. He also opined that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds. *Id.*

The remaining opinions the ALJ relied on are from Dr. Emily Sandbach, who was Plaintiff's primary care physician. AR: 873. The second opinion consists of a series of statements in her treatment notes regarding Plaintiff's back and knee conditions. *Id.* The statements generally indicate that Dr. Sandbach does not believe that Plaintiff's impairments are disabling and that Plaintiff should exercise more. For example, on September 18, 2018, Dr. Sandbach wrote that she refused to fill out a handicap placard request for Plaintiff because "I believe she needs to walk, and as I have told [Plaintiff], I do not consider her back problem a disability." AR: 1166-67. The third opinion is Dr. Sandbach's July 31, 2019 treatment notes that discuss various dietary and exercise recommendations for Plaintiff, such as that she "could walk 45 minutes a day." AR: 1887. Dr. Sandbach also wrote, "I have seen her MRI and there are no findings that would physically limit her from walking!" *Id.*

The final medical source opinion at issue is also from Dr. Sandbach. The ALJ, however, wholly rejected this separate opinion by giving it no weight. AR: 874-75. This opinion is not found in Plaintiff's medical records, but instead on a letter to Dr. Sandbach from Plaintiff's attorney. AR: 1965. The attorney's letter states in relevant part:

8

> It would be helpful if you would sign this letter or on a prescription pad as to whether or not you agree with the PT FCE limiting [Plaintiff] to a sedentary work tolerance and if, to a reasonable degree of medical probability, she was at a sedentary tolerance as early as October 31, 2017?

AR: 1965. On the letter, Dr. Sandbach wrote "Agree [illegible] The Above Statements" and signed her name. *Id.*

Plaintiff testified at the hearing that she "was constantly in pain and she was constantly changing positions all day." AR: 867. She said that her ability to sit was, at best, between five and ten minutes. AR: 905. Plaintiff stated that she sat in her bed during the day, where she could lean back on the padded headboard, but that she could only sit for "four or five minutes at a time" in the wooden chairs in her kitchenette. AR: 896. She testified that she could not stand for ten minutes at a time and, when asked about lifting three pounds, stated that she "avoid[s] lifting anything heavy because . . . I can feel the pull in my back no matter what I'm lifting." AR: 906.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR: 867-68. In addition to the medical source opinions discussed above, the ALJ noted, for example, that Plaintiff had not done her suggested physical therapy or pain management, had made inconsistent statements about her need for a walker, and had activities of daily living inconsistent with this

9

level of limitation, such as her complaints of back pain related to moving boxes while moving homes. AR: 868-870. Instead of Plaintiff's stated limitations, as noted above, the ALJ found that Plaintiff could stand or walk for four hours in an eight-hour workday and lift 10 to 20 pounds depending on frequency. AR: 866.

### A. Evaluation of Dr. Barrett's Opinion

Plaintiff argues the ALJ erred in weighing Dr. Barrett's opinions because Judge Martinez already found that the opinion was inconsistent with the record evidence and is stale because of later medical records, such as the MRI. Dkt. 10 at 25-27. Plaintiff asserts that, because Dr. Barrett is a reviewing physician, his opinion is presumptively entitled to the least weight.[4] *Id.* at 27-28. The Court respectfully disagrees.

It is error for an ALJ not to adequately state and explain what weight they give to medical opinions.[5] *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir.

---

[4] Plaintiff also asserts the ALJ's comment that he did not give controlling weight to Dr. Barrett's opinion is reversible error because it shows that he applied the incorrect standard. Dkt. 10 at 28. The Court disagrees. Any error is harmless because the ALJ did not give Dr. Barrett's opinion controlling weight and therefore moved on to the correct analysis where he noted that Dr. Barrett was "not a treating source." AR: 872.

[5] Effective March 27, 2017, "the SSA regulations governing the procedures and standards for evaluating medical source opinions were substantially revised." *Mileto v. Kijakazi*, No. 20-cv-01866-KMT, 2021 WL 9848902, at *5 (D. Colo. Sept. 21, 2021), *aff'd sub nom. Mileto v. Comm'r*, SSA, No. 21-1403, 2022 WL 17883809 (10th Cir. Dec. 23, 2022) (referring to 20 C.F.R. §§ 404.1520c, 416.920c). Because Plaintiff applied for benefits before the effective date of these revisions, the revised regulations do not apply to her claim.

2004). The ALJ must give "good reasons" for the weight they ultimately assign each medical opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). The ALJ's decision must be sufficiently specific to make clear to any subsequent reviewer the weight given to the medical opinion, and the reason for that weight. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Boilerplate language, unconnected to any evidence in the record, will not suffice to support an ALJ's conclusion. *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). An ALJ may reasonably give less weight to a medical opinion that differs from that same doctor's notes. *See Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013).

The ALJ found that Dr. Barrett's opinion was supported by the record and consistent with the more recent evidence. AR: 872-73. These are legally sufficient rationales for weighing a medical source opinion. *Watkins*, 350 F.3d at 1301. Although the regulations in effect at the time gave presumptively greater weight to the opinions of treating sources, such presumptions can be overcome based on the factors discussed by the ALJ. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). He supported this determination through a detailed analysis of the medical evidence, with particular focus on the more recent medical evidence and whether it differed materially from what came before. AR: 869-70.

11

The law of the case does not foreclose the ALJ from giving the same weight to Dr. Barrett's opinion that he gave it before so long as he does so for valid reasons. Judge Martinez rejected the previous rationale adopted by the ALJ, namely, that Dr. Barrett's opinion was consistent with the whole of the evidence. AR: 964-966. Judge Martinez found that Dr. Barret's opinion was inconsistent with "in particular Plaintiff's hearing testimony." AR: 966. On remand, rather than relying on overall consistency, the ALJ pointed out the portions of the old, pre-appeal record that supported Dr. Barrett's opinion and explained his rationale for limiting his reliance on Plaintiff's hearing testimony. AR: 872-73. The ALJ's finding that the more recent evidence is generally consistent with Dr. Barrett's opinion is supported by substantial evidence. For example, Dr. Sandbach's discussion of the later MRI indicates she did not view it as reflecting a material change in Plaintiff's abilities. AR: 1887. And, while there are additional findings in the more recent evidence, the ALJ accounted for the "diabetic neuropathy and her left knee" pain by limiting Plaintiff's standing and walking in the RFC determination. AR: 873.

While there is conflicting evidence in the record, the Commissioner (and ALJ) is charged with resolving such conflicts and has done so here using the correct standards and appropriate analysis. *Ellison*, 929 F.2d at 536. The Court cannot reweigh the evidence and does not find reversible error. *Id*.

### B. Evaluation of Dr. Sandbach's Opinions

Plaintiff argues that the ALJ erred in accepting some opinions by Dr. Sandbach while rejecting others. Dkt. 10 at 29. She suggests that Dr. Sandbach's statements that Plaintiff should walk more are not inconsistent with agreeing that Plaintiff was limited to sedentary work. *Id*. at 30-31. Plaintiff argues that, instead, the evidence is consistent with a sedentary work limitation and that the ALJ erred in relying on, for example, Plaintiff moving boxes because she was just unpacking boxes moved by others. *Id*. at 32-33.

These arguments are not persuasive in view of the evidence. It is permissible for an ALJ to weigh different portions of a medical source opinion differently so long as they give legitimate reasons for doing so. *Rael v. Berryhill*, 678 F. App'x 690, 694-95 (10th Cir. 2017). The extensive, longitudinal treatment notes of Dr. Sandbach contain numerous references not only to Plaintiff's capacity to stand and walk but also recommendations that she do so more often. AR: 870 ("The general theme of the claimant's visits with her primary care provider in 2017 and 2018 is that [Dr. Sandbach] generally refused to fill out any of the claimant's requested disability paperwork . . . [and] consistently felt working would be good for the claimant"). These statements span both the new and old evidence, with the exercise recommendations noted above coincident with Plaintiff's new 2019 MRI. An earlier example is Dr. Sandbach's 2017 comment that she did not agree with Plaintiff applying for disability and, instead, "[s]he needs to be out and about, social, active and working even part

time would be a good thing for her back pain as well as depression/anxiety." AR: 1220. Notably, like the 2019 comment, this earlier comment suggests that Plaintiff would benefit medically from being up and walking more, including at work, rather than avoiding such activities. With this context, the ALJ's rejection of Dr. Sandbach's conclusory agreement with a sedentary limitation over the same period on the attorney letter is reasonable and well supported.

Likewise, the ALJ's reference to Plaintiff's medical records and activities of daily living as an explanation for questioning her testimony and accepting Dr. Sandbach's contrary opinions is reasonable and supported by substantial evidence. The issue is not whether Plaintiff suffered any pain, but whether the Plaintiff suffered "disabling pain." *Huston v. Bowen*, 838 F.2d 1125, 1129 (10th Cir. 1988). As the ALJ noted, Dr. Sandbach's treatment notes contain normal medical findings, such as 5/5 strength and Plaintiff reporting a lack of pain. ARs: 875 (citing AR: 1972 ("Denies Back pain, Denies Painful joints, Denies Swollen joints"), 1986 ("normal strength, moves all extremities equally"), 2000 (same)). It was reasonable for the ALJ to conclude that these medical records are inconsistent with Plaintiff's testimony regarding the persistence and severity of her pain. AR: 870 ("Longitudinally, however, the claimant's alleged severity of her pain and symptoms is simply inconsistent with her objective signs and findings.").

The ALJ could consider Plaintiff's activities of daily living in evaluating her pain so long as he did not rely on "minimal daily activities" exclusively to find Plaintiff

14

did not suffer disabling pain. *Thompson*, 987 F.2d at 1490 (citing *Frey v. Bowen*, 816 F.2d 508, 516 (10th Cir. 1987)). Plaintiff notes the record contains a statement by her that she was merely unpacking boxes moved by others when she complained of shoulder pain, which the ALJ referred to as Plaintiff moving boxes. AR: 1894. But even if this episode were not considered, there remains substantial evidence in the record supporting the ALJ's determinations, such as the medical records and opinions. Here again, the Court cannot reweigh the evidence and does not find reversible error. *Ellison*, 929 F.2d at 536.

### C. Other RFC Arguments Raised by Plaintiff

Plaintiff raises a series of brief arguments against the ALJ's RFC determination under a collective heading. Dkt. 10 at 33. First, Plaintiff disputes the RFC's inclusion of the abilities to walk and stand for four hours in an eight-hour workday. She claims the RFC "did not take into account [Plaintiff's] need to frequently change positions." *Id*. She also notes the ALJ cited several separate reasons for reducing the permissible duration of walking and standing to four hours from the six-hour limit opined by Dr. Barrett, and argues that these multiple bases should result in an "added limitation" below four hours. *Id*. at 37. Second, Plaintiff argues the ALJ failed to consider her impairments in combination. *Id*. at 38-39. Finally, Plaintiff asserts the ALJ failed to properly evaluate her pain, including the pain caused by her chronic pain syndrome. *Id*. at 40-41. The Court has considered each of these arguments and does not find them persuasive.

The ALJ supported his RFC determination with both medical source opinions and a thorough review of the medical evidence. AR: 866-76. Above, the Court did not find reversible error in the ALJ's weighing of the medical source opinions, which support less restrictive limitations than those ultimately included in the RFC. AR: 873. Although the ALJ gave a few separate rationales for including more restrictive limits in Plaintiff's walking and standing RFC than those opined by Dr. Barrett, there is no suggestion in his analysis that any impairments or collective impairments resulted in greater overall limitations than those included in the RFC. *Id*. The ALJ, nonetheless, indicated twice that he considered Plaintiff's impairments in combination as well as considered them in combination with Plaintiff's related symptoms, including chronic pain syndrome. AR: 863, 876; *see Flaherty*, 515 F.3d at 1071. In doing so, the ALJ specifically found that Plaintiff's testimony regarding a need for frequent positional changes was not supported by the new evidence. AR: 870. Under the Court's limited scope of review, the ALJ's findings are conclusive where supported by substantial evidence even if the Court could reach a different conclusion. *Ellison*, 929 F.2d at 536. Accordingly, the Court does not find reversible error.

**2. The ALJ's Findings at Step Five**

Plaintiff argues the Commissioner did not meet his burden at Step Five to show there are jobs in the national economy that she could perform based on her RFC. Dkt. 10 at 41-43. This argument depends on Plaintiff's above arguments that the ALJ

erred in formulating the RFC. *Id.* at 43. Because the Court rejected those arguments above, the Court also concludes that the Plaintiff has not shown reversible error here. *See Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995).

To be sure, at Step Five, it is the Commissioner's burden to establish that—considering the plaintiff's age, education, work experience, and RFC—work exists in significant numbers in the national economy that the plaintiff can perform. *Dikeman v. Halter*, 245 F.3d 1182, 1186 (10th Cir. 2001); *Barrett v. Astrue*, 340 F. App'x 481, 487 (10th Cir. 2009). An ALJ may use a VE at Step Five to provide an opinion about the plaintiff's ability to perform work in the national economy. *See Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996). This is customarily achieved by the ALJ posing a hypothetical to the VE that includes all the limitations from the ALJ's RFC determination.

An ALJ may rely on the VE's testimony as substantial evidence if the hypothetical posed to the VE contained each of the RFC limitations. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (noting the VE's answer to a hypothetical question that included all the limitations from the RFC assessment provided a proper basis for the ALJ's disability decision); *cf. Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.") (internal quotations and citation omitted); *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) ("[T]he hypothetical

17

questions posed to the VE to assist with the step-five determination must reflect with precision all—and only—the impairments and limitations borne out by the evidentiary record.") (internal quotations and citation omitted).

The only burden on the Commissioner at Step Five is to prove there is other work the plaintiff can perform; this burden shifting at Step Five does not shift the plaintiff's burden to prove their RFC. 20 C.F.R. § 416.960(2) ("We are not responsible for providing additional evidence about your residual functional capacity because we will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work."). Here, the hypothetical the ALJ posed to the VE precisely contained each of the limitations from the RFC, and therefore, the VE's testimony is substantial evidence in the record supporting the ALJ's findings at Step Five. *Compare* AR: 866 *with* AR: 910-16 (regarding hypotheticals one and two). This further demonstrates the lack of error at this step in the sequential process.

\*   \*   \*

For the reasons shared above, the Court is satisfied that the ALJ considered all relevant facts, applied the correct legal standards, and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Plaintiff was not disabled within the meaning of Title XVI of the Social Security Act.

Accordingly, IT IS ORDERED that the Commissioner's Final Decision is AFFIRMED and this civil action is DISMISSED, with each party paying their own fees and costs.

DATED: March 14, 2024

BY THE COURT:

S. Kato Crews
United States District Judge